UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JANE EVANS,<br><br>        Plaintiff,<br><br>        v.<br><br>WALGREENS BOOTS ALLIANCE, INC., a Delaware corporation; and WALGREEN CO., an Illinois corporation,<br><br>        Defendant. | Case No. 1:22-cv-00380-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Defendants' Motion to Disqualify and Exclude Doctor Ettie Rosenberg as an Expert Witness. (Dkt. 37). Defendants Walgreens Boots Alliance, Inc., and Walgreens Co. (collectively, Walgreens) seek to exclude and disqualify Plaintiff Jane Evans' pharmacy expert, Ettie Rosenberg, PharmD, JD, because of an alleged, imputed conflict of interest. For the reasons discussed below, the Court will deny the motion.

### I. BACKGROUND

Evans filed this action against Walgreens in state court, and Walgreens removed it to federal court. In her Complaint, Evans alleges that Walgreens negligently filled and dispensed her thyroid medication prescription with a dosage of fifty micrograms rather than the prescribed five micrograms, resulting in Evans suffering substantial health issues and damages.

Evans timely disclosed Dr. Rosenberg as a pharmacy expert on January 19, 2024. (Dkt. 35-2, Witko Decl. ¶ 2). Dr. Rosenberg was retained to offer expert opinions related to the practice of pharmacy, Walgreens' pharmacy policies and procedures, and other pharmacy-related issues. Although Dr. Rosenberg is both a licensed pharmacist and a licensed attorney, Evans did not retain her as an attorney or as legal expert, and Dr. Rosenberg's disclosure did not provide any law firm

MEMORANDUM DECISION AND ORDER - 1

affiliation. (Dkt. 35-3 at pp. 2, 6). On February 29, 2024, Walgreens timely disclosed its opposing experts. In their reports, Walgreens' experts evaluated and rebutted Dr. Rosenberg's opinions. (Dkt. 39-1 at pp. 5-6).

On May 23, 2024, over four months after Evans disclosed Dr. Rosenberg as an expert, Walgreens performed a Google search and discovered that Dr. Rosenberg was listed as "of counsel" for the law firm Clark Hill - a firm that currently represents Walgreens. (Dkt. 37-2, Stacey Decl. ¶ 5). More specifically, Clark Hill has represented Walgreens in tort litigation in Texas since 2018 in fourteen different matters, four of which "involved pharmacy/druggist liability, the same type of tort liability that this case involves." (*Id.* ¶ 7). One of those four cases remains ongoing. (*Id.*). Clark Hill does not represent Walgreens in any cases in California, where Dr. Rosenberg is a licensed pharmacist and licensed attorney. (*Id.* ¶ 3).

On May 29, 2024, Evans filed a Motion for Leave to File First Amended Complaint to Allege a Claim for Punitive Damages. In support, Evans submitted a seven-page declaration from Dr. Rosenberg, who opined that "Walgreens knowingly implemented strenuous pressure on its pharmacy staff that was known to be dangerous and result in a higher risk of prescription error." (Dkt. 33-1, Rosenberg Decl. ¶ 3). Two days later, on May 31, Walgreens provided notice to Evans that it had discovered "an undisclosed conflict of interest" involving Dr. Rosenberg because Clark Hill's website listed her as "of counsel." The Clark Hill website described Dr. Rosenberg's practice as "devoted exclusively to forensic consultation in a range of matters related to pharmacy practice." (Dkt. 35-4 at p. 1).

According to Dr. Rosenberg, her designation as "of counsel" on the Clark Hill website was an "oversight," caused by a merger of her husband's previous law firm with Clark Hill, where Dr. Rosenberg's husband is currently a transactional real estate attorney. (Dkt. 39-2, Rosenberg

Decl. ¶ 8). The merger occurred in August 2023. Dr. Rosenberg attests in her declaration that she has not practiced law since 2008 and that she has not been a member of any firm since 2008. (*Id.* ¶ 5). Rather, from 2008 to 2011, Dr. Rosenberg was a full-time practicing pharmacist, and from 2011 to 2014, she went into "pharmacy academia to teach pharmacy law and regulatory affairs." (*Id.* ¶ 5). In 2014, Dr. Rosenberg joined a graduate (Doctor of Pharmacy) program where she is currently a full-time professor, "with an expert practice in pharmacy standard of care, compliance, risk management, and other pharmacy/pharmacology related issues." (*Id.*). Since Evans filed her motion to disqualify Dr. Rosenberg, Clark Hill has removed her biography from its website.

Based on Dr. Rosenberg's declaration, she attests that she has never represented or formed any attorney-client relationship with any Walgreens entity. (*Id.* ¶ 6). In fact, Dr. Rosenberg has never had any "operational" connection with Clark Hill or with the law firm that merged with Clark Hill in August 2023. She is not and never has been an employee of Clark Hill; she has never had an office or extension at any Clark Hill firm location; she performs "absolutely no work for Clark Hill and never [has] performed any work for Clark Hill"; she does not and has never maintained a functional email address at Clark Hill and receives no emails from Clark Hill; she has never had access to the Clark Hill server or any Clark Hill files, matters, database, case files, or client lists; she has never spoken with any Clark Hill attorney or staff member about Walgreens; and she has no confidential information pertaining to Walgreens. (*Id.* ¶ 12(a)-(i)). Further, Dr. Rosenberg attests she did not list Clark Hill on her curriculum vitae because she believes "doing so would be at minimum inappropriate or misleading to represent considering [she has/had] no operational relationship, interest, or other professional relationship with either firm, and [she has] not practiced law since 2008." (*Id.* ¶ 15).

As part of ongoing meet-and-confer efforts between counsel for Evans and Walgreens, Evans provided Walgreens with a copy of Dr. Rosenberg's declaration before Walgreens filed this motion "in an attempt to demonstrate the absence of a conflict and to demonstrate the lack of a basis for pursuing the Motion Defendants have now filed." (Dkt. 39 at p. 2). In response, Walgreens emphasizes "it was represented to the public that Dr. Rosenberg was an attorney member of Clark Hill on Clark Hill's website since approximately August of 2023." (Dkt. 37-1 at p. 5). Walgreens argues the listing of Dr. Rosenberg as "of counsel" on the Clark Hill website creates "an appearance of impropriety," and therefore, she should be disqualified from serving as a pharmacy expert in this case.

## II. ANALYSIS

"Federal courts have the inherent power to disqualify expert witnesses to protect the integrity of the adversary process, protect privileges that otherwise may be breached, and promote public confidence in the legal system." *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004) (citing *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980)). Disqualification, however, "is a drastic measure that courts should impose only hesitantly, reluctantly, and rarely." *Id.* Such motions are often tactically motivated and tend to derail the efficient progress of litigation. *U.S. for Use & Benefit of Lord Elec. Co. v. Titan Pac. Const. Corp.*, 637 F. Supp. 1556, 1562 (W.D. Wash. 1986). "Because of this potential for abuse, disqualification motions should be subjected to particularly strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985).

In considering whether to disqualify an expert, "[i]t is important to remember that the 'expert disqualification standard must be distinguished from the attorney-client relationship because experts perform very different functions in litigation than do attorneys.'" *Hewlett-Packard*, 330 F. Supp. 2d at 1092 (quoting *English Feedlot, Inc. v. Norden Labs., Inc.*, 833 F.

MEMORANDUM DECISION AND ORDER - 4

Supp. 1498, 1501 (D. Colo. 1993)); *see also Commonwealth Ins. Co. v. Stone Container Corp.*, 178 F. Supp. 2d 938, 946-49 (N.D. Ill. 2001) (noting "[w]hen a lawyer is engaged as a testifying expert, that lawyer is not being asked to perform the traditional role of a lawyer in providing legal advice"). "Attorneys have an ethical duty to represent and advocate for their clients and are bound by a duty of loyalty." *N. Pacifica, LLC v. City of Pacifica*, 335 F. Supp. 2d 1045, 1050 (N.D. Cal. 2004). Experts, by contrast, "play a more limited role in litigation." *Id.* They are not advocates in the litigation but sources of information and opinions. *Id.*

Indeed, Walgreens concedes that the ethical rules governing attorney conflicts of interest do not apply to disqualify Dr. Rosenberg because her engagement as an expert witness did not establish an attorney-client relationship. Instead, Walgreens relies on the analysis set forth by the federal district court in *Commonwealth*, 178 F. Supp. 2d 938, which drew from, but did not strictly apply, the rules of professional conduct to derive a standard based on the broad duty of loyalty attorneys owe clients under Rule 1.7. Walgreens argues that "this is the standard applicable to Dr. Rosenberg[,] and [it] prohibits the appearance of impropriety." (Dkt. 37-1 at p. 6).

In *Commonwealth Ins.*, the plaintiff retained an attorney, Sugarman, to provide expert testimony regarding the defendant's previous insurance litigation strategy and its positions in pursuit of insurance coverage. 178 F. Supp. 2d at 940. Sugarman was a partner in the law firm of Heller Ehrman White & McAuliffe, LLP, and was located in Heller's San Francisco office. Meanwhile, Stromberg, who was also a Heller partner but located in Heller's Los Angeles office, represented the defendant in an unrelated matter involving a joint venture in China. *Id.* at 942. Upon receiving Sugarman's expert report on the plaintiff's behalf, the defendant contacted Stromberg to seek legal advice about a proposed amendment to the China deal. *Id.* Eventually, the

defendant moved to disqualify Sugarman as the plaintiff's expert on conflict-of-interest grounds. *Id.*

Relying on Rules 1.7 and 1.10 of the Model Rules of Professional Conduct, the defendant argued Sugarman and Heller owed the defendant an undivided duty of loyalty as a client. *Id.* The defendant argued Heller's representation of the plaintiff breached the duty of loyalty by placing a "material limitation" on Heller's ability to represent the defendant in the China deal and by creating "the appearance of impropriety and thus a conflict of interest under Rule 1.7(b)" that should be imputed to Heller under Rule 1.10. *Id.*

The court addressed "whether Rule 1.7(b) precludes a law firm that is currently representing a client from accepting a concurrent engagement to act as a testifying expert for a third party who is an adversary of the client in unrelated litigation, when there is no evidence that any confidential communication could or would be shared." *Id.* at 943. In resolving this issue, the court rejected the defendant's argument that Rules 1.7 and 1.10 applied to disqualify Sugarman as a testifying expert. *Id.* The court reasoned that the Model Rules of Professional Conduct did not apply because Heller served the plaintiff as a testifying expert, not as an attorney, and thus no attorney-client relationship existed between the plaintiff and Heller. *Id.*

Although the court concluded Rule 1.7's literal terms did not apply to disqualify Sugarman and Heller, the court applied the "spirit of the rules" in considering whether Heller breached its duty of loyalty to the defendant by accepting engagement to act as a testifying expert for the plaintiff, thereby "creating the appearance of impropriety." *Commonwealth*, 178 F. Supp. 2d at 946. Applying the "spirit" of the ethical rules, the court concluded no actual conflict nor the appearance of impropriety existed. *Id.* Rather, the court found Heller's representation of the defendant involved matters "far afield" from the litigation in which Sugarman was disclosed as a

testifying expert, and it was highly unlikely that Sugarman or Heller had learned any confidential information in connection with the China deal that could be used to the defendant's detriment in the litigation in which Sugarman had been disclosed as an expert. *Id.* at 948. The "likelihood of an actual conflict [was] rendered even more remote" by the fact that Sugarman and Heller's San Francisco office were not involved in the China deal. *Id.* at 949. The court therefore declined to employ the "drastic measure" of compelling Heller Ehrman to withdraw from its engagement by Aon. *Id.*

Here, as in *Commonwealth*, the "spirit" of ethical rules does not compel Dr. Rosenberg's disqualification because the undisputed facts do not support a finding of any conflict. *See id.* at 948 ("The problem with [the defendant's] position (and it is a significant one) is that the undisputed facts of this case do not support a finding of conflict."). Contrary to Walgreen's contention, Dr. Rosenberg's lack of an actual "of counsel" relationship with Clark Hill is directly relevant to whether an actual conflict exists. Because Dr. Rosenberg has never performed any work for Clark Hill and has never had access to the Clark Hill servers, files, matters, database, cases, or client lists, there is not even the remote possibility she was or could be privy to any confidential information that might be used to Walgreens' detriment in this litigation. *See id.* at 948-49 (noting that because matters were "completely unrelated," likelihood that attorney-expert had learned any information that could be used to adverse party's disadvantage was "extremely remote"); *Televisa, S.A. de C.V. v. Univision Commc'ns, Inc.*, 635 F. Supp. 2d 1106, 1108 (C.D. Cal. 2009) (denying motion to disqualify when there was "not even a possibility" attorney-expert was privy to any confidential information that could be used to opposing party's detriment when he prepared expert report); *N. Pacifica, LLC*, 335 F. Supp. 2d at 1049-51 (central concern is whether attorney-expert has unfairly obtained confidential information about opposing party).

MEMORANDUM DECISION AND ORDER - 7

Moreover, the likelihood of an actual conflict is rendered even more remote because neither Dr. Rosenberg nor Clark Hill's Los Angeles office (with which Dr. Rosenberg was associated per the Clark Hill website) "had any involvement or knowledge whatsoever" of the work done on the "druggist liability" matters in Texas. *Commonwealth*, 78 F. Supp. 2d at 949 (likelihood of an actual conflict was "rendered even more remote" by fact that neither testifying expert nor office of which he worked "had any involvement or knowledge whatsoever" in law firm's representation of opposing party). Because the ethical rules imputing conflicts do not strictly apply to Dr. Rosenberg's engagement as Evans' testifying expert, this Court agrees with the court in *Commonwealth* that the fact that separate lawyers and offices of Clark Hill are involved in Walgreen's representation, on the one hand, and the engagement as Evans' testifying expert, on the other hand, "is a consideration that renders any likelihood of any actual conflict even more remote." *Id.* Because "the likelihood of an actual conflict arising is virtually nil, [Dr. Rosenberg's] testimony as an expert witness is not ethically barred." *Televisa* , 635 F. Supp. 2d at 1108-09.

Despite Dr. Rosenberg's lack of any actual relationship with Clark Hill that could give rise to an actual conflict, Walgreens nonetheless contends that all that matters is the "appearance of impropriety" created by Clark Hill's mistaken listing of Dr. Rosenberg as an attorney member of the law firm. But the Ninth Circuit has expressly held in the context of Canon 9 of the ABA Code, which proscribes "even the appearance of professional impropriety," that an alleged impropriety alone will warrant disqualification only in "extreme" circumstances, "i.e., when the alleged impropriety is clear, affects the public view of the judicial system or the integrity of the court, and is serious enough to outweigh the parties' interests in counsel of their own choice." *Optyl Eyewear*, 760 F.2d at 1049.

As the Fifth Circuit has further explained, an overbroad application of the appearance of impropriety doctrine "would ultimately be self-defeating":

> Similarly conscious of the need to keep both the public and private segments of the profession above suspicion, courts have disqualified attorneys under the appearance of evil doctrine even though the record was free of any evidence of actual wrongdoing. It does not follow, however, that an attorney's conduct must be governed by standards which can be imputed only to the most cynical members of the public . . . . Indeed, the more frequently a litigant is delayed or otherwise disadvantaged by the unnecessary disqualification of his lawyer under the appearance of impropriety doctrine, the greater the likelihood of public suspicion of both the bar and the judiciary. An overly broad application of Canon 9, then, would ultimately be self-defeating.

*Woods v. Covington Cnty. Bank*, 537 F.2d 804, 813 (5th Cir. 1976) (citations omitted). For this reason, "a lawyer need not 'yield to every imagined charge of conflict of interest, regardless of the merits, so long as there is a member of the public who believes it . . . . Surely there can be some objective content to any inquiry into whether the 'appearance of justice (or propriety)' has been compromised in a given case.'" *Id.* (quoting J. MacKenzie, The Appearance of Justice 240 (1974)). Courts in the context of attorney disqualification under Canon 9 therefore require "at least a reasonable possibility that some specifically identifiable impropriety did in fact occur." *Woods*, 537 F.2d at 813.

No reason exists to apply a lesser standard to the disqualification of a licensed attorney acting solely as a non-attorney expert to which the rules of professional conduct do not strictly apply. *C.f. Optyl Eyewear*, 760 F.2d at 1049 (quoting *Int'l Elecs. Corp. v. Flanzer*, 527 F.2d 1288, 1295 (2d Cir. 1975) ("Canon 9 . . . should not be used promiscuously as a convenient tool for disqualification when the facts simply do not fit within the rubric of other specific ethical and disciplinary rules.")). Indeed, even under *Commonwealth*, the critical issue was not whether the attorney-expert had been listed on the law firm website as an attorney and partner, thus creating the appearance of impropriety. Instead, the *Commonwealth* court examined the likelihood of an

MEMORANDUM DECISION AND ORDER - 9

actual conflict arising and whether the attorney-expert, by virtue of the law firm's representation, could have unfairly obtained confidential information about the opposing party. *Commonwealth*, 178 F. Supp. 2d at 946-49.

Such "extreme" circumstances do not exist here, such that the alleged impropriety is so clear to the reasonable person, to justify Dr. Rosenberg's disqualification. Although the Clark Hill website listed Dr. Rosenberg as "of counsel," it explicitly stated that her practice was "devoted exclusively to forensic consultation" and not to the practice of law. With this information, any reasonable person would recognize that Dr. Rosenberg was not representing clients as an attorney rather than offering her services as forensic consultant for pharmacy matters; thus, mitigating any appearance of impropriety caused by Clark Hill's mistaken listing of Dr. Rosenberg as "of counsel" on its website. *See In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*, 658 F.2d 1355, 1361 (9th Cir. 1981) ("This court will affirm such an order [of disqualification] only where the impropriety is clear and is one that would be recognized as such by all reasonable persons."). Under these facts where the concerns expressed are "merely anticipatory and speculative," Walgreens cannot show that Clark Hill's listing of Dr. Rosenberg's as "of counsel" has created ethical problems or endangered the integrity of the court, warranting her disqualification. *Id.*

Walgreen's reliance on *AGI Suretrack LLC v. Farmers Edge Inc.*, No. 8:22CV275, 2024 WL 693971, at *1 (D. Neb. Feb. 20, 2024), does not persuade the Court otherwise. In *AGI*, the plaintiff filed a lawsuit against the defendants, alleging patent infringement. The defendants hired Stoll, an attorney and partner in the law firm of Faegre Drinker Biddle & Reath LLP, to serve as an expert in the patent litigation. Faegre had represented the plaintiff's parent company in "numerous legal matters." The plaintiff was also Faegre's current client and had previously hired

Faegre to represent it in an employment matter, negotiating severance and termination terms for a senior vice president, Tatge. Tatge was the inventor of patents at issue in the patent litigation. As part of that representation involving Tatge, the plaintiff's parent company provided Faegre with "highly confidential information, including information about litigation strategy" in the patent litigation. *Id.*

The plaintiff moved to disqualify Stoll, the Faegre partner, as an adverse expert witness in the patent litigation. The court in *AGI* granted the motion, distinguishing *Commonwealth* on the grounds that the *Commonwealth* court had found no conflict of interest and Heller had not received any confidential information related to the litigation. By contrast, in *AGI*, the plaintiff had shared confidential information, including trial strategy, with Faegre related to the patent litigation in which the defendants had retained Faegre's partner, Stoll, as an expert witness. The *AGI* court therefore found that the circumstances of that case were "along the lines of the *Commonwealth* court's description of a situation in which the testifying expert's firm possess[ed] client confidences that could be used to the client's detriment." *Id.* at *2. As a result, the *AGI* court concluded that allowing Stoll to serve as an adverse witness in that case would have created an appearance of impropriety that the Court could not ignore. *Id.*

Unlike in *AGI*, Walgreens submits no evidence that it has ever provided Clark Hill with highly confidential information that could be used to its detriment in this case. Walgreens has provided very little information about the druggist liability cases for which Clark Hill provided representation in Texas that would suggest Clark Hill obtained confidential information that would pose any detriment to Walgreens in this litigation. More importantly, given that Dr. Rosenberg has never had access to *any* Clark Hill legal matters, as discussed, no possibility exists that she was or

could be privy to any confidential information that could be used to Walgreens' detriment. *Televisa*, 635 F. Supp. 2d at 1108.

Likewise, the Court is not persuaded that Rule 1.8, which prohibits a lawyer from "knowingly" acquiring a "pecuniary interest adverse to a client" unless certain criteria are met, "provides further support that the appearance of impropriety exists here, and the imputed conflict warrants disqualification." (Dkt. 37-1 at p. 16). Walgreens does not cite to any legal authority to support the proposition that Rule 1.8 should apply to disqualify Dr. Rosenberg from serving as a pharmacy expert. First, the undisputed facts here indicate that Dr. Rosenberg did not actually have an "of counsel" relationship with Clark Hill. Even if she did, the comment to Rule 1.8 makes clear the intent of the rule is to prevent a lawyer from taking advantage of a client. Model Rule of Professional Conduct 1.8, Committee Comment (explaining in transactions where "the lawyer has no advantage in dealing with the client . . . the restrictions in [Rule 1.8(a)] are unnecessary and impracticable"). Such circumstances do not exist here. Thus, Rule 1.8 does not apply to disqualify Dr. Rosenberg.

In summary, the Court concludes that Dr. Rosenberg's engagement as a pharmacy expert in this litigation does not violate the express terms or the spirit of the ethical rules and does not create an appearance of impropriety. Having considered the facts of this case, the Court does not believe disqualifying Dr. Rosenberg as Evans' pharmacy expert will serve the interests of justice and fairness or serve to maintain the integrity of the legal profession in the eyes of the public. Walgreens is, therefore, not entitled to the "drastic measure" of Dr. Rosenberg's disqualification.

### III. ORDER

**IT IS ORDERED that:**

1. Defendants' Motion to Disqualify and Exclude Doctor Ettie Rosenberg as an Expert Witness (Dkt. 37) is **DENIED**.

2. The parties shall submit a stipulation to set the briefing schedule for Plaintiff's Motion for Leave to File First Amended Complaint to Allege a Claim for Punitive Damages *no later than August 5, 2024*.

DATED: July 29, 2024

_Amanda K. Brailsford_
Amanda K. Brailsford
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 13